FIFTH DIVISION
June 29, 2007

No. 1-05-3362

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County |
| | ) | |
| v. | ) | |
| | ) | |
| TAREK ALBITAR, | ) | |
| | ) | Honorable |
| Defendant-Appellant. | ) | Rickey Jones, |
| | ) | Judge Presiding. |

JUSTICE O'MARA FROSSARD delivered the opinion of the court:

Defendant Tarek Albitar appeals the trial court's order denying him a refund of his bond to his surety. Defendant was deported by the Immigration and Naturalization Service before his trial was set to begin. Defendant argues that bond forfeiture was inappropriate because he "was unable to appear through no fault of his own but, rather, through the actions of the United States Government." For the reasons that follow, we affirm.

BACKGROUND

Defendant, Tarek Albitar, is a native and citizen of Jordan. He is not a citizen of the United States. On November 13, 1987, defendant was admitted to the United States as a nonimmigrant visitor. On May 2, 1997, defendant's status was adjusted to that of a lawful permanent resident.

On October 31, 2002, defendant was arrested and charged with aggravated unlawful use of a weapon in case number 02 CR 6752. He was convicted of this offense on September 5, 2003.

Defendant was subsequently charged with murder, conspiracy to commit murder, conspiracy to commit armed robbery, and conspiracy to commit aggravated kidnaping in case numbers 02 CR 30237 and 02 CR 30238. Bail was set at $1,250,000, which required a 10% deposit with the clerk of the circuit court in the amount of $125,000. Mahmoud Saleh, defendant's brother and surety, posted $125,000 as bail on behalf of defendant. The conditions of the bail bond included a requirement that defendant appear to answer the charges in court until discharge or final order of court, and that he not leave Illinois without the court's permission.

On October 26, 2004, the Immigration and Naturalization Service (INS) initiated deportation proceedings against defendant. The INS charged that defendant was subject to removal from the United States as a result of his conviction for aggravated unlawful use of a weapon in 2003 and took defendant into custody pending a final determination by an immigration judge. On November 10, 2004, the INS issued an order for an agreed deportation. On February 2, 2005, defendant was deported from the United States to Jordan. On April 21, 2005, the trial court in the instant case issued a "no bail" arrest warrant for defendant.

On June 20, 2005, the trial court entered a bond forfeiture and issued a "no bail" arrest warrant for defendant. On July 19, 2005, defendant's counsel filed a "Motion For Entry of Cash Refund to Surety." In the motion, counsel alleged that as a result of defendant's deportation, there was no possible way for defendant or his surety, Mahmoud Saleh, to continue to comply

1-05-3362

with the terms of the bond. The motion further states that, "[h]ad Immigration allowed the criminal proceedings to be completed before deporting the Defendant, Saleh would not be in jeopardy of losing the $125,000 bond he posted on behalf of the defendant." The motion does not state that defendant requested the INS to stay his deportation pending resolution of the criminal case brought against him. The trial court denied counsel's request to refund defendant's bond. The trial court entered judgment on the bond forfeiture <u>nunc</u> <u>pro</u> <u>tunc</u> to July 19, 2005.

Defendant now appeals the trial court's order denying his request to refund the bond.

ANALYSIS

I. Jurisdiction Issue

Initially, the State maintains that this court lacks jurisdiction to consider this appeal.

The Illinois Constitution provides that the appellate court has jurisdiction to hear appeals from both final judgments and other orders for which the supreme court rules permit interlocutory appeals. See Ill. Const. 1970, art. VI., § 6. An order's substance, and not its form, determines whether it is appealable. <u>People v. Savory</u>, 309 Ill. App. 3d 408, 411 (1999). An order is said to be final if it " ' "disposes of the rights of the parties, either upon the entire controversy or upon some definite and separate part thereof" ' [Citation]." <u>In re Estate of French</u>, 166 Ill. 2d 95, 101 (1995), quoting <u>Treece v. Shawnee Community Unit School District No. 84</u>, 39 Ill. 2d 136, 139 (1968). In a criminal case, there is no final judgment until the imposition of sentence, and in the absence of that judgment, an appeal cannot be entertained except as specified in Supreme Court Rule 604 (210 Ill. 2d R. 604). <u>People v. Dotson</u>, 214 Ill. App. 3d 637, 645 (1991), citing <u>People v. Flores</u>, 128 Ill. 2d 66 (1989).

3

1-05-3362

The State characterizes the order being appealed from in the instant case as an "interlocutory order" and notes that Supreme Court Rule 604(c) sets forth specific procedures which a defendant in a criminal case must follow when appealing from an interlocutory bail order entered prior to his conviction. One of those procedures requires a defendant to file a verified motion for review in the appellate court. See 188 Ill. 2d 604(c)(2) ("[t]he appeal may be taken at any time before conviction by filing a verified motion for review in the Appellate Court"). In the instant case, the State asserts, the surety failed to comply with that requirement because he "simply filed a brief" rather than "a verified motion for review." Accordingly, the State argues this court lacks jurisdiction to consider defendant's appeal.

We recognize that Rule 604(c) applies in criminal cases, is "[t]he only rule which establishes a right to review interlocutory bail orders," and "sets forth limited and specific procedures for invoking that right." People v. Beaty, 351 Ill. App. 3d 717, 722 (2004) . Specifically Rule 604(c) authorizes a defendant, prior to his conviction, to "appeal to the Appellate Court from an order setting, modifying, revoking, denying, or refusing to modify bail or the conditions thereof." 188 Ill. 2d R. 604(c)(1). We also recognize this court does not have jurisdiction to review such an interlocutory order when a defendant fails to follow the procedural requirements included in Rule 604(c). See Beaty, 351 Ill. App. 3d at 722. We hold, however, that the bond forfeiture judgment being appealed from in the instant case is not an interlocutory order "setting, modifying, revoking, denying, or refusing to modify bail or the conditions thereof," but, rather, is a final order over which we have jurisdiction. See People v. Montaigne, 86 Ill. App. 3d 220, 222 (1980).

In Montaigne, the State appealed a trial court order vacating a bond forfeiture judgment previously entered against the defendant. Montaigne, 86 Ill. App. 3d at 221. The defendant argued that the order was not appealable because the State's right to appeal was limited to Supreme Court Rule 604(a), which did not authorize appeal of orders vacating bond forfeiture judgments. Montaigne, 86 Ill. App. 3d at 222. The reviewing court rejected the defendant's argument, concluding that the bond forfeiture judgment was a final order not subject to the requirements included in Supreme Court Rule 604. Montaigne, 86 Ill. App. 3d at 222.

In addressing the appealability of the bond forfeiture judgment, the court recognized that Rule 604(a) does not authorize the State to appeal orders vacating bond forfeiture judgments and that the State may not appeal in a criminal case unless authorized by a provision of Rule 604(a). Montaigne, 86 Ill. App. 3d at 222. The court concluded, however, that a bond forfeiture proceeding is not a "criminal case" and that "the essence of such a proceeding is the entry of a civil judgment on a bond." Montaigne, 86 Ill. App. 3d at 222. In support of this conclusion, the court noted that "[t]he statute which provided for entry of the instant bond forfeiture judgment [citation] also provided for enforcement and collection of such judgments in the same manner as civil cases" and that the court "ha[d] previously found it appropriate to apply the Civil Practice Act to a proceeding to vacate a bond forfeiture." Montaigne, 86 Ill. App. 3d at 222. Accordingly, the court concluded, "the right of appeal in such matters should be available to the State as in civil cases." Montaigne, 86 Ill. App. 3d at 222.

The order being appealed from in the instant case, as in Montaigne, is a bond forfeiture judgment. The order does not set, modify, revoke, deny, or refuse to modify bail or a condition

thereof, and thus defendant's appeal of it is not subject to the requirements of Supreme Court Rule 604(c). As in Montaigne, the essence of the proceeding giving rise to the bond forfeiture judgment in the instant case was civil rather than criminal in nature. Indeed, the judgment forfeits the portion of the bond paid on defendant's behalf and entitles the State to enforce the remaining unpaid portion. See 725 ILCS 5/110-7(g) (West 2002) (providing that "balance of the judgment [of forfeiture] may be enforced and collected in the same manner as a judgment entered in a civil action"). Accordingly, consistent with Montaigne, we hold that the bond forfeiture judgment on appeal before us qualifies as a final and appealable order over which we have jurisdiction.

In a related argument, the State contends that this court lacks jurisdiction to consider the instant appeal because Rule 604(c)(1) authorizes only a *defendant* to appeal from a bail order prior to this conviction, and "[i]n the instant appeal, the surety seeks to overturn an order of the trial court which denied him a refund of defendant's forfeited bond." We reject the State's argument for two separate reasons. First, as previously discussed, the provisions of Rule 604(c)(1) are applicable to interlocutory orders and do not govern our review of the final judgment at issue in the instant appeal. Second, even if some alternative legal authority precludes a nonintervening surety from appealing a bond forfeiture judgment, the surety in the instant case (defendant's brother) is not, contrary to the State's suggestion, the party appealing the judgment of forfeiture now on review. Both the notice of appeal and the appellant's opening brief refer to defendant as the appellant in the instant case. Indeed, in both the notice of appeal and the opening brief, "defendant" "prays" that we reverse the order of the trial court. Moreover,

the specific relief defendant seeks on appeal in its appellate brief is for this court to "reverse[] the order of the trial court below and return the cash bond to Mr. Albitar's attorneys for disbursement to the surety, Mr. Albitar's brother." The record reflects the defendant, not the surety, is the appellant in the instant case.

## II. Forfeited Cash Bond Issue

Defendant contends that bond forfeiture was inappropriate in the instant case "because [he] was unable to appear through no fault of his own but, rather, through the actions of the United States Government."

"The decision whether to set aside or remit a forfeiture rests within the sound discretion of the district court and will be reversed only if the court acted arbitrarily or capriciously." United States v. Gutierrez, 771 F.2d 1001, 1003 (7th Cir. 1985). Relief from forfeiture has been governed in Illinois by statute, and not by common law; to set aside a forfeiture, the condition of the statute must be met. People v. Garfield, 33 Ill. App. 2d 164, 167 (1961), citing People ex rel. Swanson v. Sullivan, 339 Ill. 146, 152 (1930).

Section 110-7(g) of the Code of Criminal Procedure specifies the conditions under which a bond forfeiture judgment should be entered, and the Illinois Supreme Court, in turn, has relied upon these conditions to determine whether such a judgment should be vacated. See 725 ILCS 5/110-7(g) (West 2004); People v. Sanders, 131 Ill. 2d 58, 64-66 (1989).

Section 110-7(g) states in relevant parts as follows:

> "If the accused does not comply with the conditions of the
>
> bail bond the court having jurisdiction shall enter an order

declaring the bail to be forfeited. Notice of such order of forfeiture shall be mailed forthwith to the accused at his last known address. If the accused does not appear and surrender to the court having jurisdiction within 30 days from the date of the forfeiture or within such period satisfy the court that appearance and surrender by the accused is impossible and without his fault the court shall enter judgment for the State if the charge for which the bond was given was a felony or misdemeanor." 725 ILCS 5/110-7(g) (West 2004).

The plain language of section 110-7(g) requires the trial court to enter a judgment of forfeiture if, within 30 days from the date of the order of forfeiture, the defendant does not appear and surrender and fails to satisfy the trial court that his appearance and surrender are impossible and without his fault. Thus, in order to vacate a bond forfeiture judgment, a defendant who does not appear within 30 days from the date of the forfeiture must establish that he was unable to appear during that time frame and that his inability to appear was not attributable to his own fault.

Defendant argues that his failure to appear in court was not his fault because the INS had taken him into custody and had started removal proceedings against him. Defendant further argues that there was nothing "voluntary" about his acceptance of a voluntary departure because his removal was inevitable, and it was therefore impossible for him to resolve his pending criminal matter.

We reject defendant's argument as a review of the record reflects that defendant failed to

present evidence to the trial court sufficient to establish that he was unable to appear before the court within 30 days of the forfeiture order through no fault of his own. In the instant case, defendant was taken into custody by the INS and agreed to a voluntary deportation more than two months before his February 2, 2005, departure. The record, however, does not indicate that defendant or his surety made any effort during those two months to contact the trial court to explain his situation. Indeed, the record does not reflect that defendant informed the trial court that he had agreed to a voluntary departure when his case appeared on the trial court's call on December 15, 2004, or on January 10, 2005, or that defendant informed the trial court at any time prior to his departure that he was in the custody of the INS and had agreed to a voluntary departure. See Sanders, 131 Ill. 2d at 65 (affirming bond forfeiture and holding that defendant's federal incarceration did not prevent him from timely notifying trial court of his unavailability).

Furthermore, we note that the record does not indicate that defendant, who was in the custody of the INS as the result of his own criminal conduct, requested a stay of deportation in order to resolve his pending criminal charges. See In re Sanford & Sons Bail Bonds, Inc., 96 S.W.3d 199, 205 (Tenn. Crim. App. 2002) (noting that surety who is aware of ongoing deportation proceedings and is seeking to set aside forfeiture judgment has obligation to demonstrate that he reasonably attempted to stay deportation pending resolution of criminal case). Defendant has failed to identify evidence indicating that his failure to appear was due to something other than his own fault.

We find People v. Torres, 289 Ill. App. 3d 513 (1997), instructive. On appeal the

defendant argued he was unable to stand trial because he was "effectively deported" when granted voluntary departure. Torres, 289 Ill. App. 3d at 518. The court in Torres rejected that argument and found that defendant failed to inform the state court of the decision by the INS to grant him voluntary departure, noting that defendant did not seek to resolve the pending charges against him. Torres, 289 Ill. App. 3d at 518-19. Similarly, in the instant case, defendant chose voluntary departure and took no steps to resolve the pending charge.

The provisions of defendant's bail bond specifically advised the surety (Saleh) that defendant's failure to appear in court could result in a forfeiture of bail. Saleh signed a section of the bond that states in relevant part: "I understand that if the defendant fails to comply with the conditions reflected on this bond, *I may lose all of my money* should the court enter a forfeiture of bail order." (Emphasis in original.) By agreeing to post defendant's bond, Saleh knowingly assumed the risk of defendant's failure to appear in court. As previously noted, the record does not reflect that Saleh made any effort to notify the court of defendant's voluntary departure.

"In most cases, the setting aside of a forfeiture or its remission while the defendant is still at large would undermine the purpose of bail bonds, i.e., to insure the presence of the accused." Gutierrez, 771 F.2d at 1004. We believe, based upon the totality of the circumstances presented by the instant case, that setting aside the forfeiture judgment and returning the bond to the surety would be inconsistent with that purpose and could potentially encourage future defendants to disregard the conditions of their bail bonds. As the district court noted in United States v. Gambino:

"[T]he Court is mindful of the effect that a remission

would have on the integrity of the bail system. If individuals charged with notorious crimes who are released on bail after the posting of a large bond are led to believe that a portion of that bond will be remitted in the event of flight simply because the forfeiture involves a large amount of money, the credibility of the bail system would be substantially undermined. While the appearance bond clearly is not to be used as punishment for the underlying offense of jumping bail, the Government does have a legitimate interest in enforcing its rights under the bond in order to deter such conduct by other future defendants." United States v. Gambino, No. 9S 88 Cr. 919 (PKL), slip op. at 8 (S.D.N.Y. August 5, 1993).

### CONCLUSION

We find no abuse of discretion by the trial court's decision not to return defendant's forfeited cash bond to defendant's attorneys for disbursement to the surety, defendant's brother. For the reasons previously discussed, we affirm the trial court's order denying a refund of defendant's bond.

Affirmed.

TULLY and GALLAGHER, JJ., concur.

1-05-3362